UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Application of

|  |  |  |
|---|---|---|
| | : | |
| ALSTOM BRASIL ENERGIA E TRANSPORTE | : | Civ. A. No. 15 cv 8221 (AKH) |
| LTDA.; ALSTOM POWER, INC., | : | |
| | : | |
| Petitioners, | : | Hon. Alvin K. Hellerstein |
| | : | |
| vs.: | | **ECF Case** |
| | : | |
| MITSUI SUMITOMO SEGUROS S.A., | : | **Electronically Filed** |
| | : | |
| Respondent. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OF LAW IN FURTHER SUPPORT OF RESPONDENT MITSUI SUMITOMO SEGUROS S.A.'S MOTION <u>TO DISMISS PETITION TO CONFIRM ARBITRATION AWARD</u>

Lea Haber Kuck
Elizabeth A. Hellmann
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
*Attorneys for Respondent Mitsui
Sumitomo Seguros S.A.*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .............................................................................................................................3

I.      The Petition Must Be Dismissed Because This Court Lacks Personal Jurisdiction
        Over Mitsui ...................................................................................................................3

        A.      The Court Must Have Personal Jurisdiction Over Mitsui in Order To
                Confirm the Award ..............................................................................................3

        B.      There Is No Constitutional Basis for the Court's Exercise of Personal
                Jurisdiction Over Mitsui ......................................................................................4

                1.      The Exercise of General Jurisdiction Over Mitsui Would Violate
                        the Due Process Clause ...........................................................................5

                2.      The Exercise of Specific Jurisdiction Over Mitsui Would Violate
                        the Due Process Clause ...........................................................................5

                3.      Mitsui Did Not Consent to Jurisdiction in New York ...............................7

        C.      There Is No Basis Under New York Law for the Court's Exercise of
                Personal Jurisdiction Over Mitsui ........................................................................8

                1.      CPLR 7501 Does Not Confer Personal Jurisdiction Over Mitsui ..............8

                2.      Section 9 of the FAA Does Not Confer Personal Jurisdiction Over
                        Mitsui .....................................................................................................9

        D.      Alstom Has Not Properly Served Mitsui ............................................................10

                1.      New York Business Corporation Law Section 307 Applies Only
                        Where There Is a Basis for General Jurisdiction .....................................10

                2.      "Actual Notice" Is Not Sufficient for Service Because Mitsui Has
                        Not Consented to the Court's Exercise of Personal Jurisdiction
                        Over It ..................................................................................................11

II.     The Petition Should Be Dismissed on Grounds of *Forum Non Conveniens* ....................12

        A.      The Court Has Discretion to Dismiss Alstom's Petition on Grounds of
                *Forum Non Conveniens* ...................................................................................12

B.      The Facts of This Case Weigh Heavily In Favor of a *Forum Non Conveniens* Dismissal ...........................................................14

    1.      Alstom's Choice of This Forum Is Not Entitled to Deference ..................14

    2.      The Brazilian Courts Are an Adequate Alternative Forum ......................15

    3.      The Balance of Public and Private Interest Factors Strongly Favor Dismissal...........................................................................15

III.    In the Alternative, Confirmation Should Be Denied Because the Tribunal Had No Authority to Resolve Mitsui's Dispute With Alstom ........................................................18

A.      Whether Mitsui Was Bound to Arbitrate Is Subject to *De Novo* Review By This Court ...........................................................................18

B.      Brazilian Law Governs the Question of Whether Mitsui Was Bound to Arbitrate ...........................................................................20

C.      Mitsui Was Not Bound to Arbitrate Under Brazilian Law ...................................21

IV.     Alstom's Other Arguments Mischaracterize Mitsui's Motion And Are Unavailing..........22

CONCLUSION....................................................................................................................24

# TABLE OF AUTHORITIES

## CASES

*American Bureau of Shipping v. Tencara Shipyard S.P.A.*,
   170 F.3d 349 (2d Cir. 1999)..................................................................................6

*Apollo Computer, Inc. v. Berg*,
   886 F.2d 469 (1st Cir. 1989).................................................................................19

*Arthur Anderson LLP v. Carlisle*,
   556 U.S. 624 (2009)...............................................................................................20

*Base Metal Trading S.A. v. Russian Aluminum*,
   253 F. Supp. 2d 681 (S.D.N.Y. 2003), *aff'd*, 98 F. App'x 47 (2d Cir. 2004)...................17

*Baysand Inc. v. Toshiba Corp.*,
   No. 15-cv-02425-BLF, 2015 WL 7293651 (N.D. Cal. Nov. 19, 2015) ...........................19

*Bohn v. Bartels*,
   620 F. Supp. 2d 418 (S.D.N.Y. 2007)...................................................................17

*Construtora Norbeto Odebrecht S.A. v. General Electric Co.*,
   No. 07-CV-8014 (CM), 2007 WL 3025699 (S.D.N.Y. Oct. 12, 2007)............................14

*Contec Corp. v. Remote Solution Co.*,
   398 F.3d 205 (2d Cir. 2005)..............................................................................19, 20

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014)........................................................................................5, 10

*Dain Bosworth, Inc. v. Fedora*,
   No. 92 Civ. 7813 (JSM), 1993 WL 33642 (S.D.N.Y. Feb. 3, 1993) ...............................15

*Figueiredo Ferraz e Engenharia de Projeto Ltda. v. Republic of Peru*,
   665 F.3d 384 (2d Cir. 2011)..............................................................................13, 14

*First Investment Corp. of the Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*,
   703 F.3d 742 (5th Cir. 2012) .............................................................................3, 4

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995).........................................................................................7, 18

*Flick v. Stewar-Warner Corp.*,
   76 N.Y.2d 50 (1990) ............................................................................................10

*FR 8 Singapore Pte. Ltd. v. Albacore Maritime, Inc.*,
   794 F. Supp. 2d 449 (S.D.N.Y. 2011).................................................................20

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
    582 F.3d 393 (2d Cir. 2009)............................................................................................3

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002) ......................................................................................4

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)......................................................................................................17

*Hancor, Inc. v. R&R Engineering Products, Inc.*,
    381 F. Supp. 2d 12 (D.P.R. 2005)................................................................................9

*InterCarbon Bermuda, Ltd. v. Caltex Trading & Transport Corp.*,
    146 F.R.D. 64 (S.D.N.Y. 1993) ...............................................................................9, 12

*Iragorri v. United Technologies Corp.*,
    274 F.3d 65 (2d Cir. 2001)...........................................................................................17

*J. McIntyre Machinery, Ltd. v. Nicastro*,
    131 S. Ct. 2780 (2011)...............................................................................................6, 7

*Lauritzen Kosan Tankers v. Chemical Trading, Inc.*,
    903 F. Supp. 635 (S.D.N.Y. 1995) .............................................................................12

*Maria Victoria Naviera, S.A. v. Cimentos del Valle, S.A.*,
    759 F.2d 1027 (2d Cir. 1985).......................................................................................15

*Marine Trading Ltd. v. Naviera Comercial Naylamp S.A.*,
    879 F. Supp. 389 (S.D.N.Y. 1995)..............................................................................11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*,
    553 F.2d 842 (2d Cir. 1977).........................................................................................6

*MidOil USA, LLC v. Astra Project Finance Pty Ltd.*,
    No. 12 Civ. 8484(PAC)(KNF), 2013 WL 4400825 (S.D.N.Y. Aug. 15, 2013),
    *aff'd*, 594 F. App'x 48 (2d Cir. 2015).........................................................................11

*Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*,
    311 F.3d 488 (2d Cir. 2002)..........................................................................13, 14, 16

*Motorola Credit Corp. v. Uzan*,
    388 F.3d 39 (2d Cir. 2004)...........................................................................................20

*Phoenix Aktiengesellschaft v. Ecoplas, Inc.*,
    391 F.3d 433 (2d Cir. 2004).........................................................................................9

*Power Electric Distribution, Inc. v. Hendigan Group Linix Motor Co.*,
    No. Civ. 13-199 ADM/HB, 2015 WL 880642 (D. Minn. Mar. 2, 2015) ....................11

*Prodprogramma-Impuls Ltd. v. Bank of India*,
No. 12 Civ. 3036 (LLS), 2012 WL 2411809 (S.D.N.Y. June 25, 2012) .......................... 17

*QPro Inc. v. RTD Quality Services USA, Inc.*,
761 F. Supp. 2d 492 (S.D. Tex. 2011) ................................................................ 19

*Sarhank Group v. Oracle Corp.*,
404 F.3d 657 (2d Cir. 2005) .............................................................................. 18

*Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Insurance Co.*,
732 F. Supp. 2d 293 (S.D.N.Y. 2010), *rev'd*, 668 F.3d 60 (2d Cir. 2012) ...................... 12

*Schneider v. Thailand*,
No. 10 Civ. 2729(DAB), 2011 WL 12871599 (S.D.N.Y. Mar. 14, 2011), *aff'd*,
688 F.3d 68 (2d Cir. 2012) ............................................................................... 17

*Shaw Group, Inc. v. Triplefine International Corp.*,
322 F.3d 115 (2d Cir. 2003) .............................................................................. 19

*Silec Cable S.A.S. v. Alcoa Fjardaal, SF*,
No. 12-01392, 2012 WL 5906535 (W.D. Pa. Nov. 26, 2012) ................................... 19

*Sonera Holding B.V. v. Çukurova Holding A.Ş.*,
750 F.3d 221 (2d Cir. 2014), *cert. denied*, 134 S. Ct. 2888 (2014) ......................... 3, 4, 8

*Stolt Tankers B.V. v. Allianz Seguros, S.A.*,
No. 11 Civ. 2331(SAS), 2011 WL 2436662 (S.D.N.Y. June 16, 2011) .................. 6, 7, 11

*Stone & Webster, Inc. v. Triplefine International Corp.*,
118 F. App'x 546 (2d Cir. 2004) ....................................................................... 10

*Summit Jet Corp. v. Meyers*,
193 Misc. 2d 480 (2d Dep't 2002) ....................................................................... 8

*(TBC) Inc. v. Soundview Broadcasting, LLC*,
33 Misc. 3d 1231(A), 2011 N.Y. Slip. Op. 52186(U) (Sup. Ct. Queens County
2011) ...................................................................................................... 8

*Thai-Lao Lignite (Thailand) Co. v. Laos*,
No. 10 Civ. 5356(KMW), 2011 WL 3516154 (S.D.N.Y. Aug. 3, 2011) .......................... 18

*Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A.*,
622 F. Supp. 25 (S.D.N.Y. 1985) ......................................................................... 4

*U.S.O. Corp. v. Mizuho Holding Co.*,
547 F.3d 749 (7th Cir. 2008) ............................................................................ 17

v

*Victory Transport, Inc. v. Comisaria General de Abastecimentos y Transportes*,
    336 F.2d 354 (2d Cir. 1964), *superseded by statute*, 28 U.S.C. § 1605, *as stated in*
    *Garb v. Republic of Portland*, 207 F. Supp. 2d 16 (E.D.N.Y. 2002)................................11

*VRG Linhas Aereas S/A v. MatlinPatterson Global Opportunities Partners II L.P.*,
    605 F. App'x 59 (2d Cir. 2015)...................................................................................18, 23

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)..........................................................................................4, 5, 7

*Winterthur International America Insurance Co. v. Bank of Montreal*,
    No. 02 Civ. 6889(RCC), 2002 WL 31521102 (S.D.N.Y. Nov. 13, 2002).......................15

## STATUTES

9 U.S.C. § 2.........................................................................................................................23

9 U.S.C. § 9...........................................................................................................................9

9 U.S.C. § 10........................................................................................................................22

9 U.S.C. § 203......................................................................................................................13

9 U.S.C. § 302......................................................................................................................13

## RULES

CPLR 7501..............................................................................................................................8

## OTHER AUTHORITIES

David D. Siegel, *New York Practice* (5th ed. 2011) ...................................................8, 9

Gary B. Born, *International Commercial Arbitration* (2d ed. 2014)...........................21

Inter-American Convention on International Commercial Arbitration,
    Jan. 30, 1975, 1438 U.N.T.S. 245, 14 I.L.M. 336 ...........................................23

Mitsui[1] respectfully submits this memorandum of law in further support of its motion to dismiss Alstom's Petition to confirm the Award.

## PRELIMINARY STATEMENT

Mitsui has moved to dismiss this action on the grounds that the Court has no personal jurisdiction over Mitsui, and that even if it did have jurisdiction, the Petition should be dismissed on the grounds of *forum non conveniens*. Mitsui also moved to dismiss on the alternative grounds that confirmation must be denied because there was no arbitration agreement between Mitsui and Alstom, and the Tribunal did not have any authority to adjudicate the claims that Alstom asserted before it. Most of Alstom's opposition to the motion, however, focuses on *other* issues that were not raised by Mitsui. To the extent that Alstom does attempt to address the issues raised by Mitsui, its arguments are legally deficient.

*First*, as set forth in Mitsui's opening memorandum of law, personal jurisdiction over Mitsui is a prerequisite to considering the merits of Alstom's Petition. (*See* Resp. Mem. at 8-14.) Alstom premises its argument that the Court has personal jurisdiction solely on the fact that Alstom initiated and pursued arbitration proceedings against Mitsui in New York over Mitsui's repeated objection. (Pet. Opp. at 22-23.) But Alstom has not alleged that Mitsui engaged in *any* conduct that purposefully targeted New York, as is required as a matter of

---

[1] Unless otherwise noted, the capitalized terms used in this reply are as defined in Respondent's Memorandum of Law in Support of Motion to Dismiss Petition to Confirm Arbitration Award ("Resp. Mem."). This reply is accompanied by the Declaration of Lea Haber Kuck ("Jan. 2016 Kuck Decl.") with Exhibits, and also refers to: Petitioners' Memorandum of Law in Opposition to Mitsui's Motion to Dismiss ("Pet. Opp.") with accompanying Declaration of Peter Hirst ("Hirst Decl.") and Exhibits, filed in this court on January 25, 2016; Resp. Mem. with accompanying Declaration of Lea Haber Kuck ("Dec. 2015 Kuck Decl."), filed in this court on December 4, 2015; and Petitioners' Petition to Confirm Arbitration Award ("Petition" or "Pet.") and Memorandum of Law in Support of Petition to Confirm the Arbitration Award ("Pet. Mem."), both of which were attached to Respondent's Notice of Removal, filed in this Court on October 19, 2015 ("Notice of Removal"), as Exhibits B and E, respectively.

constitutional due process.  Indeed, Alstom does not even address the constitutional due process requirement, nor has Alstom identified any statutory grant of authority permitting the Court to exercise personal jurisdiction over Mitsui, which is an independent requirement under the law of the Second Circuit.

*Second*, Alstom's Petition should be dismissed on the grounds of *forum non conveniens*.  (*See* Resp. Mem. at 15-23.)  Alstom's choice of this forum is entitled to little deference in light of the fact that it has now instituted parallel proceedings in Brazil to homologate the Award there and to try to shut down the Brazilian litigation initiated by Mitsui prior to the arbitration.  (*See* Jan. 2016 Kuck Decl. Ex. A.)  It remains a mystery what Alstom seeks to accomplish by also having the Award confirmed in the United States and Alstom's papers shed no light on this question.  Although Alstom argues that this Court should decide the Petition because the parties have "raise[d] solely issues of law, not of fact" (Pet. Opp. at 45), it ignores that whether Mitsui was bound to the arbitration agreement between Alstom and Alunorte is a question of *Brazilian* law which militates in favor of *forum non conveniens* dismissal.  Plainly, the Brazilian courts are best positioned to rule upon the extent to which a Brazilian insurer pursuing a Brazilian statutory claim in a Brazilian court may be bound – under Brazilian law – to an arbitration agreement signed by its Brazilian insured and a third party.

*Third*, and in the alternative, confirmation should be denied because no arbitration agreement existed between Alstom and Mitsui, and therefore the Tribunal did not have any authority to decide any dispute between Mitsui and Alstom.  (*See* Resp. Mem. at 23-28.)  The Tribunal's finding to the contrary is subject to the Court's *de novo* review under controlling Supreme Court and Second Circuit authority.  Alstom's argument that the Tribunal had authority to decide questions of arbitrability fails because Mitsui did not clearly and unmistakably agree to

submit this question (or any other question) to arbitration.  Finally, under the applicable Brazilian law, Mitsui cannot be bound as a subrogated insurer to an arbitration agreement entered into between Alstom and its insured.

　　　　　For all of these reasons, the Petition should be dismissed.

## ARGUMENT

**I.      The Petition Must Be Dismissed Because This Court Lacks Personal Jurisdiction Over Mitsui**

　　**A.      The Court Must Have Personal Jurisdiction Over Mitsui in Order To Confirm the Award**

　　　　　As set forth in Mitsui's opening memorandum (Resp. Mem. at 8-9), controlling Second Circuit precedent requires this Court to determine that it has personal jurisdiction over Mitsui before entertaining the merits of the Petition.  *See Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 224-27 (2d Cir. 2014) (per curiam), *cert. denied*, 134 S. Ct. 2888 (2014); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 396-98 (2d Cir. 2009).   Alstom attempts to dismiss this authority as "wholly inapplicable" by distinguishing it on a factual basis (Pet. Opp. at 24-25), but it cannot escape the Second Circuit's clear mandate that, as a legal matter, personal jurisdiction over the respondent is a "prerequisite" to the recognition and enforcement of *any* arbitral award.  *Frontera*, 582 F.3d at 398.

　　　　　This is because "[e]ven though the New York [and Panama] Convention[s] do[] not list personal jurisdiction as a ground for denying enforcement, the Due Process Clause [of the Constitution] requires that a court dismiss an action, on motion, over which it has no personal jurisdiction."  *First Inv. Corp. of the Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 749 (5th Cir. 2012) (affirming dismissal of an action to confirm an arbitration award on grounds of personal jurisdiction).   As such, "there can be no question that the Constitution

takes precedence" over the Conventions and their implementing legislation, which are "an exercise of presidential and congressional power."  *Id.* at 749-50.  Alstom's contrary assertion – that "the Court does not need to conduct" the "traditional" personal jurisdiction analysis – has no legal basis.  (*See* Pet. Opp. at 24, quoting Resp. Mem. at 12-14.)

Establishing personal jurisdiction for purposes of a petition to confirm an arbitral award "requires a two-step inquiry": the Court must determine *both* (a) that there is a basis for personal jurisdiction under the law of the forum state *and* (b) that "the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution."  *Sonera*, 750 F.3d at 224.  The burden rests squarely on Alstom to satisfy both of these prongs.  *See, e.g.*, *First Inv. Corp.*, 703 F.3d at 746.  As demonstrated below, Alstom has not come close to meeting its burden.

**B.   There Is No Constitutional Basis for the Court's Exercise of Personal Jurisdiction Over Mitsui**

Alstom does not even attempt to address the constitutional issue raised by Mitsui, and instead focuses on the New York Civil Practice Law and Rules ("CPLR") and the Federal Arbitration Act ("FAA").  However, as set forth above, these statutes do not obviate the need to satisfy the Due Process Clause and cannot "confer personal jurisdiction" (Resp. Mem. at 24) in violation of the Constitution.  The Due Process Clause demands a sufficient "'basis'" for personal jurisdiction in an action to confirm an arbitration award, "'whether arising from the respondent's residence, his conduct, his consent, the location of his property or otherwise.'"  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1122 (9th Cir. 2002) (quoting *Transatl. Bulk Shipping Ltd. v. Saudi Chartering S.A.*, 622 F. Supp. 25, 27 (S.D.N.Y. 1985)).  These strictures regulate the courts' exercise of both general (presence-based) and specific (activity-based) jurisdiction.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 & n.6 (2014).  Here,

4

Alstom has not alleged any facts that could allow this Court to exercise either general or specific jurisdiction over Mitsui in accordance with the requirements of due process.

1.   The Exercise of General Jurisdiction Over
     Mitsui Would Violate the Due Process Clause

It is beyond dispute that Mitsui is not subject to the general jurisdiction of the New York courts, which, as a matter of due process, would require Mitsui's "affiliations" with New York to be "so constant and pervasive 'as to render [Mitsui] essentially at home'" here. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (citation omitted).   Alstom has not even attempted to argue that Mitsui has such "constant and pervasive" contacts with the State of New York, nor could it.

2.   The Exercise of Specific Jurisdiction Over
     Mitsui Would Violate the Due Process Clause

Mitsui is also not subject to the specific jurisdiction of the New York courts, because Mitsui has not engaged in any "suit-related conduct" sufficient to "create a substantial connection" with New York.   *Walden*, 134 S. Ct. at 1121.   Alstom premises its personal jurisdiction argument entirely on the fact that "the arbitration was held in New York City and the Award was issued in New York City"[2] (Pet. Opp. at 22, 23), without any attempt to explain how this constitutes "conduct" by Mitsui, or how such "conduct" has created a "substantial connection" between Mitsui and the State of New York.   Plainly, the mere fact that Alstom pursued arbitration proceedings against Mitsui in New York – to which Mitsui consistently and repeatedly objected – is insufficient to support *any* theory under which Mitsui "can be said to have targeted" New York, as required by the Due Process Clause.   *J. McIntyre Mach., Ltd. v.*

---

[2]   Alstom's Petition to Confirm the Arbitration Award falsely alleged that Mitsui had "agreed in the [unspecified] Arbitration Agreements to have the Arbitration take place in New York, New York." (Pet. Mem. 8.) However, Mitsui never contracted with Alstom at all, let alone entered into an agreement to arbitrate with Alstom. (*See* Resp. Mem. 9-10.)

*Nicastro*, 131 S. Ct. 2780, 2788 (2011) ("The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign."); *see also Walden*, 134 S. Ct. at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

Moreover, Alstom's contention that "this Court [would have] personal jurisdiction . . . over a non-signatory to an arbitration agreement who was required to arbitrate its disputes in New York" (Pet. Opp. at 23) is irrelevant, because Mitsui was never "required" to arbitrate its Brazilian statutory claims against Alstom.  (*See infra* Section III.C.)  The three cases Alstom cites in support of this proposition are inapplicable here for several reasons.  *First,* they all involved a motion to compel arbitration, not a petition to confirm an award.  Alstom has not cited a single case in which a non-signatory to an arbitration clause was found to have consented to the jurisdiction of the courts of the forum state *for the purpose of confirming an award*. *Second,* the cases either (a) do not address the extent to which the New York courts may exercise personal jurisdiction over a non-signatory to a New York arbitration clause, *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*, 553 F.2d 842 (2d Cir. 1977) (movant was signatory to arbitration clause), or (b) find that the non-signatory "consented" to the New York arbitration clause and therefore to the jurisdiction of the New York courts for the purposes of compelling arbitration, *see American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999) (third-party beneficiary of a contract with a New York arbitration clause consented to arbitration by invoking its rights under the contract); *Stolt Tankers B.V. v. Allianz Seguros, S.A.*, No. 11 Civ. 2331(SAS), 2011 WL 2436662, at *2 (S.D.N.Y. June 16, 2011) (non-signatory was bound to arbitration clause by operation of law and had "consented" to personal jurisdiction for

the purposes of an action to compel arbitration).[3]   *Third,* and most importantly, all three cases were decided before two key Supreme Court decisions clarified that a litigant seeking to establish specific jurisdiction must demonstrate that its adversary engaged in "suit-related conduct" specifically "target[ing]" the forum state.   *Walden*, 134 S. Ct. at 1121; *J. McIntyre Machinery, Ltd.*, 131 S. Ct. at 2788.   To the extent that they would permit the Court to exercise personal jurisdiction over Mitsui absent a finding of such conduct, as Alstom would interpret them to do, *Stolt Tankers* and *Tencara* are no longer good law.

3.   Mitsui Did Not Consent to Jurisdiction in New York

It bears repeating that Mitsui did not engage in any conduct amounting to consent to the arbitration agreement between Alstom and Alunorte.   Rather, Mitsui maintained its objection to the authority of the Tribunal and to the arbitration proceedings themselves at all times.   (*See, e.g.*, Dec. 2015 Kuck Decl. Ex. C (Letter to ICC from L. Kuck, dated Jan 2, 2015); Notice of Removal, Ex. J (Terms of Reference ¶¶ 12, 100).)   A non-signatory who forcefully and consistently objects to the jurisdiction of the arbitral tribunal (such as Mistui) has not "consented" to the jurisdiction of the tribunal or to the arbitral process itself.   *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946 (1995).   Therefore, Alstom has no basis to argue that Mitsui consented to the jurisdiction of the New York courts by virtue of the fact that the arbitration took place in New York.

---

[3]   Although the facts of *Stolt Tankers*, No. 11 Civ. 2331(SAS), 2011 WL 2436662 (S.D.N.Y. June 16, 2011), are facially similar to the facts of this case, there is one key difference:  In *Stolt Tankers*, the district court applied U.S. law to the question of whether a subrogated insurer was bound to an arbitration clause signed between its insured and a third party.  *See id.* at *2 & n. 12, 21-26.  Under the Brazilian law applicable here, Mitsui is not bound by the arbitration clause between Alstom and Alunorte.  *See infra* Section III.C.

**C.     There Is No Basis Under New York Law for the Court's Exercise of Personal Jurisdiction Over Mitsui**

Even assuming that the Court could properly exercise personal jurisdiction over Mitsui as a constitutional matter (which it cannot), Alstom also must demonstrate that there is a basis for the Court's exercise of personal jurisdiction over Mitsui under New York law.  *See Sonera*, 750 F.3d at 224.  Contrary to Alstom's contentions, neither CPLR 7501 nor Section 9 of the FAA purport to confer personal jurisdiction over Mitsui.  (*See* Pet. Opp. at 22-24.)

1.     CPLR 7501 Does Not Confer Personal Jurisdiction Over Mitsui

CPLR 7501 on its face confers only *subject matter* jurisdiction upon the New York courts to "enforce [an arbitration agreement] and to enter judgment on an award," and is silent regarding the courts' personal jurisdiction over the parties.  *See* CPLR 7501; *see also* David D. Siegel, *New York Practice* § 606 (5th ed. 2011) ("CPLR 7501 authorizes 'the courts of the state' to enforce arbitration agreements and enter judgment on awards." (citation omitted)).  As such, Alstom cannot properly invoke CPLR 7501 as a basis for the Court's jurisdiction over Mitsui.

Alstom cites two New York state court cases and one secondary source for its erroneous proposition that "under [Rule] 7501, courts have personal jurisdiction over a foreign party where that party arbitrates a dispute in New York."  (Pet. Opp. at 22.)  None of the sources actually support this proposition.[4]  *See Summit Jet Corp. v. Meyers*, 193 Misc. 2d 480, 481 (2d Dep't 2002) (citing Rule 7501 as the apparent basis for subject matter jurisdiction, but relying on consent to find personal jurisdiction); *(TBC) Inc. v. Soundview Broad., LLC*, 33 Misc. 3d

---

[4]     It also bears noting that neither of the two cases involves a non-signatory to the arbitration clause at issue, and only one of them actually stands for the uncontroversial proposition that express written consent to arbitrate in New York also amounts to consent to the jurisdiction of the New York courts for the purposes of a confirmation action.  *See Summit Jet Corp. v. Meyers*, 193 Misc. 2d 480, 481 (2d Dep't 2002).

1231(A), 2011 N.Y. Slip. Op. 52186(U), at *3 (Sup. Ct. Queens County 2011) (unpublished table decision) (noting that Rule 7501 confers subject matter jurisdiction over actions to compel arbitration or enforce an award); Siegel, *supra* § 98 (noting that pursuant to CPLR 7501, a contractual agreement is a common source of an *arbitrator's* subject matter jurisdiction).

2.      Section 9 of the FAA Does Not Confer Personal Jurisdiction Over Mitsui

Alstom also argues that "this Court has jurisdiction over Mitsui pursuant to Section 9 of the FAA." (Pet. Opp. at 23.)  However, Section 9 addresses only the method for service of process in a confirmation action, and its statement that "the court shall have jurisdiction of" the respondent after it has been served with process appears to refer only to the fact that service of process is a prerequisite for personal jurisdiction.  *See* 9 U.S.C. § 9.  Indeed, Alstom has not pointed to a single case in which Section 9 served as a basis for personal jurisdiction.  (*See* Pet. Opp. at at 23.)

Furthermore, in order to invoke Section 9, Alstom would have had to have served Mitsui, a non-resident of New York, "by the [U.S.] marshal of any district within which [Mitsui] may be found in like manner as other process of the court."  *See* 9 U.S.C. § 9.  Because Mitsui cannot "be found" anywhere in the United States, Alstom cannot utilize (and in fact has not utilized) the method of service envisioned in Section 9.  Alstom therefore cannot benefit from any purported grant of personal jurisdiction in the statute, which appears to be contingent on the prescribed method of service.  Indeed, several courts have refused to apply Section 9 in international arbitration cases, describing the statute as an "'anachronism'" that "'cannot account for the internationalization of arbitration law subsequent to its enactment.'"  *Hancor, Inc. v. R&R Eng'g Prods., Inc.*, 381 F. Supp. 2d 12, 15 (D.P.R. 2005) (quoting *InterCarbon Bermuda, Ltd. v. Caltex Trading & Trans. Corp.*, 146 F.R.D. 64, 67 n.3 (S.D.N.Y. 1993)); *see also, e.g., Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433 (2d Cir. 2004) (finding that Section 9's consent

to confirmation requirement conflicted with the New York Convention and was therefore inapplicable in an action to confirm an international award); *Stone & Webster, Inc. v. Triplefine International Corp.*, 118 F. App'x 546 (2d Cir. 2004) (same).

### D.   Alstom Has Not Properly Served Mitsui

1.   New York Business Corporation Law Section 307
     Applies Only Where There Is a Basis for General Jurisdiction

Alstom continues to maintain that it "properly effectuated service of process on Mitsui pursuant to [New York Business Corporation] Law [Section] 307." (Pet. Opp. at 25.) However, New York's highest court has explained that "[t]he operation of [Section] 307 is specifically limited to circumstances where there is a basis for ***general*** jurisdiction over the foreign corporation." *Flick v. Stewart-Warner Corp.*, 76 N.Y.2d 50, 55 n.1 (1990) (emphasis added). Alstom has not even attempted to allege that the New York courts have general jurisdiction over Mitsui.

Instead, Alstom argues that because "the arbitration hearings [were] conducted in New York and the Award [was] issued . . . in New York City, this court clearly has personal jurisdiction over Mitsui and, therefore, service of process pursuant to [Section 307] was proper." (Pet. Opp. at 27.) This argument ignores the distinction between general and specific jurisdiction. Even in a case where, unlike here, the respondent consented to arbitration in New York, this might provide a sufficient basis for *specific* jurisdiction for purposes of confirming the resulting award, but it would not confer *general* jurisdiction.

As set forth above, there is no argument whatsoever that Mitsui is "essentially at home'" in New York as required for a finding of general jurisdiction. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 769 (2014) (citation omitted). As such, Section 307 has no application to this case.

2.      "Actual Notice" Is Not Sufficient for Service Because Mitsui Has
Not Consented to the Court's Exercise of Personal Jurisdiction Over It

Finally, Alstom argues that "service of process in actions to confirm arbitral awards is not subject to hyper-technical requirements and actual notice to the opposing party is deemed effective even if the method of service is technically deficient."  (Pet. Opp. at 27-28.) Yet the two cases it cites in support of this proposition actually held the petitioner to the formal requirements of the applicable statute.  *See Stolt*, 2011 WL 2436662, at *1-2 (noting that "service of process on a foreign corporation *must be done* in accordance with" the applicable statute); *Marine Trading Ltd. v. Naviera Comercial Naylamp S.A.*, 879 F. Supp. 389, 392 (S.D.N.Y. 1995) (finding that service was deficient under the applicable statute but granting petitioner the chance to correct the deficiencies).

Alstom also contends that it did not need to follow any statutory formalities at all, because Mitsui allegedly received "actual notice" of the Petition.  (Pet. Opp. at 28.)  The cases it cites are similarly inapposite because they rely on an express finding that the respondent had consented the jurisdiction of the district court – usually by signing an agreement to arbitrate its dispute in the forum.  *See Victory Transp., Inc. v. Comisaria Gen. de Abastecimentos y Transportes*, 336 F.2d 354, 364 (2d Cir. 1964) ("[S]ince the appellant [h]as consented beforehand to the jurisdiction of the district court, the sole function of process in this case was . . . to notify the appellant that proceedings had commenced"), *superseded by statute*, 28 U.S.C. § 1605, *as stated in Garb v. Republic of Portland*, 207 F. Supp. 2d 16 (E.D.N.Y. 2002); *Power Elec. Distribution, Inc. v. Hendigan Grp. Linix Motor Co.*, No. Civ. 13-199 ADM/HB, 2015 WL 880642, at *6 (D. Minn. Mar. 2, 2015) ("In cases resulting from arbitration proceedings where the parties have consented to the jurisdiction of the district court, the sole purpose of service is to provide notice that a court action has commenced."); *MidOil USA, LLC*

11

*v. Astra Project Fin. Pty Ltd.*, No. 12 Civ. 8484(PAC)(KNF), 2013 WL 4400825, at *1-2 (S.D.N.Y. Aug. 15, 2013) (finding that "the claimed defects in service" were "inapposite" because "[b]y agreeing to arbitrate in New York, . . . the parties consent to the personal jurisdiction of the court that can compel the proceeding in New York"), *aff'd*, 594 F. App'x 48 (2d Cir. 2015); *Scandinavian Reins. Co. v. St. Paul Fire & Marine Ins. Co.*, 732 F. Supp. 293, 305 (S.D.N.Y. 2010) ("[D]efective service . . . can be excused by considerations of fairness in cases that result from arbitration proceedings. . . . because, when the parties enter into an agreement to arbitrate in a particular forum, they consent to personal jurisdiction in the courts of that forum."), *rev'd*, 668 F.3d 60 (2d Cir. 2012); *Lauritzen Kosan Tankers v. Chem. Trading, Inc.*, 903 F. Supp. 635, 636-37 (S.D.N.Y. 1995) (finding that "no injustice result[ed]" from giving effect to actual notice where respondent had entered into a written arbitration agreement specifying New York as the seat of the arbitration); *InterCarbon Bermuda, Ltd. v. Caltex Trading & Trans. Co.*, 146 F.R.D. 64, 68 (S.D.N.Y. 1993) (finding that "imperfect service of process in an arbitration case [was] not fatal" where respondents "recognize[d] and [] never disputed" that they were subject to the court's personal jurisdiction).

Here, Mitsui did not sign any arbitration agreement, nor did it consent to the arbitration proceedings that Alstom initiated against it in New York. Accordingly, "considerations of fairness" in the present case do not permit Alstom to flout the formal requirements of service of process.

## II.     The Petition Should Be Dismissed on Grounds of *Forum Non Conveniens*

### A.     The Court Has Discretion to Dismiss Alstom's Petition on Grounds of *Forum Non Conveniens*

As set forth in Mitsui's moving brief, even if the Court has jurisdiction to determine the issues in Alstom's Petition, it has the discretion to decline to hear the matter under

the doctrine of *forum non conveniens*. (*See* Resp. Mem. at 15-17.) Alstom's argument that *forum non conveniens* does not apply because the Court has subject matter jurisdiction over the Petition is a non-sequitur; the doctrine by definition applies when a court has jurisdiction, but declines in its discretion to hear the matter nevertheless.[5] (*See* Pet. Opp. at 44.) Of course, Sections 203 and 302 of the FAA confer all U.S. district courts with subject matter jurisdiction over *any* action to confirm an arbitral award falling under the New York or Panama Conventions, but these provisions do not affirmatively oblige the Court to entertain a matter that is best disposed of elsewhere. *See* 9 U.S.C. §§ 203, 302.

Indeed, it is well within the Court's discretion to dismiss Alstom's Petition on *forum non conveniens* grounds. Contrary to Alstom's assertion that such dismissal would be "antithetical" to the Panama Convention (Pet. Opp. at 44), the Second Circuit has held that a district court may dismiss a petition to confirm an international arbitration award on *forum non conveniens* grounds without running afoul of the Convention. *See Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 495-96 (2d Cir. 2002) (rejecting petitioner's argument that "the doctrine of *forum non conveniens* cannot be applied to a proceeding to confirm an arbitral award pursuant to the provisions of the Convention"); *Figueiredo Ferraz e Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 392 (2d Cir. 2011) (rejecting petitioner's argument that *forum non conveniens* dismissal was "not warranted because of the interest of the United States favoring enforcement of arbitration agreements in international contracts"). This is because the New York and Panama Conventions provide for enforcement "'in accordance with the procedural laws of the country where [the award] is to be

---

[5]    Of course, whether the Court may properly exercise *personal* jurisdiction over Mitsui is an entirely separate matter.

executed . . . .,' and [*forum non conveniens*] is a doctrine 'of procedure.'"  *Figueiredo*, 665 F.3d at

392 (second alteration in original) (citation omitted); *see also Monde Re*, 311 F.3d at 495-96.

    **B.**    **The Facts of This Case Weigh Heavily In Favor of a *Forum Non Conveniens* Dismissal**

        Whether a case should be dismissed on *forum non conveniens* grounds is a fact-

bound question, and hinges on (1) the level of deference (if any) that should be given to the

plaintiff's choice of forum; (2) the availability of an adequate alternative forum; and (3) the

balance of the public and private interest factors determining where the matter would be most

sensibly adjudicated.  *See, e.g.*, *Monde Re*, 311 F.3d at 498-500.  Here, on the unique facts of this

case, all three considerations weigh heavily in favor of dismissal.

        1.    <u>Alstom's Choice of This Forum Is Not Entitled to Deference</u>

        A plaintiff's choice of forum is entitled to little deference where "suit in the

international forum was foreseeable in light of the transaction."  *Construtora Norbeto Odebrecht*

*S.A. v. Gen. Elec. Co.*, No. 07-CV-8014 (CM), 2007 WL 3025699, at *7 (S.D.N.Y. Oct. 12,

2007).  Here, although Alstom decries "the notion that [it] must go to Brazil" in order to confirm

the Award (Pet. Opp. at 44), it cannot deny that as a practical matter it must "go to Brazil" – and

in fact has already "gone to Brazil" – in order to pursue its apparent goal of obstructing the

Brazilian Proceedings.

        Specifically, on November 23, 2015, Alstom filed a request to homologate the

Award with the Brazilian Superior Tribunal of Justice ("STJ"), with an accompanying request to

enjoin the Brazilian Proceedings (the "Homologation Action").[6]  (*See* Jan. 2016 Kuck Decl. Ex.

A (Request for Homologation).)  Alstom's request for homologation makes no mention of the

---

[6]    Mitsui first received Alstom's request on December 16, 2015 – less than two weeks after Mitsui filed its memorandum of law in support of the motion to dismiss.

confirmation proceedings pending before this Court, which is consistent with the absence of any requirement under Brazilian law that an arbitral award be confirmed at the seat before it can be enforced in Brazil.  (*See* Resp. Mem. at 20-21.)  Alstom's choice of this forum is even more mystifying in light of the parallel proceedings that it has now initiated in Brazil, and should not be granted any deference.

   2. <u>The Brazilian Courts Are an Adequate Alternative Forum</u>

   There is also no question that Brazil is an adequate forum in which to litigate whether the Award issued against non-signatory Mitsui should be confirmed.  (*See* Resp. Mem. at 18-19.)  Alstom cannot possibly challenge the adequacy of the Brazilian courts, given that it has already independently sought to have the Award recognized and enforced there.

   3. The Balance of Public and Private
     Interest Factors Strongly Favor Dismissal

   Alstom argues that "Mitsui has no basis to challenge the sufficiency of this forum" because the arbitration proceedings took place in New York.  (Pet. Opp. at 44-47.) Needless to say, in most cases, the seat of the arbitration will be a convenient forum to seek recognition and enforcement.  This is because parties who *mutually agree* to arbitrate in a forum are deemed to have agreed that the forum is convenient, as the cases cited by Alstom make clear. *See Maria Victoria Naviera, S.A. v. Cimentos del Valle, S.A.*, 759 F.2d 1027, 1032 (2d Cir. 1985) (party who "agreed to arbitrate in New York" was "deemed to have agreed that New York is a convenient forum"); *Winterthur Int'l Am. Ins. Co. v. Bank of Montreal*, No. 02 Civ. 6889(RCC), 2002 WL 31521102, at *5 (S.D.N.Y. Nov. 13, 2002) (same); *Dain Bosworth, Inc. v. Fedora*, No. 92 Civ. 7813 (JSM), 1993 WL 33642, at *2 (S.D.N.Y. Feb. 3, 1993) ("[T]his action was properly brought in the same forum in which the parties have agreed to arbitrate.").

There is no basis at all, however, for Alstom's much broader statement that the "[c]onvenience of th[e] forum is presumed" when the arbitration has been "held" there over the objection of one of the parties who never agreed to arbitrate there in the first place.  (Pet. Opp. at 45.)  Rather, the unique circumstances of this case tip the balance of public and private factors heavily in favor of dismissal.

*First*, unlike an award of damages that can be enforced wherever a defendant has assets, the Award grants purely declaratory relief that, as a practical matter, can only be enforced in Brazil.  Counsel for Alstom acknowledged as much during closing statements in the arbitration, revealing that Alstom intended to "take" the declarations it sought "to the Brazilian courts" so that it could "cease and desist the Brazilian [Proceedings]."  (*See* Hirst Decl. Ex. 23 (Transcript of Arbitration Hearings 362-64).)  It is not at all clear how this parallel litigation in New York furthers that objective.

*Second*, embarking on the merits of the Petition would require the Court to decide whether, under the applicable Brazilian law, Mitsui was bound as a nonsignatory to the arbitration agreement between Alstom and Alunorte.  Although under Brazilian law a subrogated insurer is *not* bound to an arbitration agreement between its insured and a third party, Alstom now effectively seeks to challenge the vast weight of Brazilian caselaw to that effect.  (*See infra* Section III.C.)  The proper arena for Alstom to test the boundaries of this Brazilian jurisprudence is not before a U.S. court.[7]  Indeed, courts frequently dismiss cases on *forum non conveniens* grounds where complex questions of foreign law are at issue.  *See, e.g.*, *Monde Re*, 311 F.3d at 500-01 (noting that "Ukranian courts are better suited than United States courts" to resolve

---

[7]   If, in fact, the Brazilian law "is still under development," as the Tribunal asserted (*see* Notice of Removal, Ex. I ¶¶ 216, 221), then this is even more reason why this Court should defer to the Brazilian courts to determine this issue.

whether non-signatory respondent was bound to arbitration clause under Ukranian law); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 (2d Cir. 2001) ("There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)); *Base Metal Trading S.A. v. Russian Aluminum*, 253 F. Supp. 2d 681, 712-13 (S.D.N.Y. 2003) (need for "extensive application of Russian law . . . weigh[ed] heavily in favor of dismissing this case in favor of a Russian forum"), *aff'd*, 98 F. App'x 47 (2d Cir. 2004); *Prodprogramma-Impuls Ltd. v. Bank of India*, No. 12 Civ. 3036 (LLS), 2012 WL 2411809, at *3 (S.D.N.Y. June 25, 2012) (India was a "superior forum" where Indian law was applicable).

*Third,* Alstom has now initiated a parallel recognition and enforcement proceeding in Brazil.  Alstom's Petition therefore "imposes an unnecessary burden" on this Court because Alstom is already pursuing "the same claim[]" elsewhere.  *See Bohn v. Bartels*, 620 F. Supp. 2d 418, 433-34 (S.D.N.Y. 2007); *see also U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 750 (7th Cir. 2008) (granting *forum non conveniens* dismissal because "[t]here is no reason for identical suits to be proceeding in different courts in different countries thousands of miles apart").  As noted previously, and not contested by Alstom, Alstom achieves nothing even if it prevails on its Petition.

Finally, although Alstom cites two cases in which a *forum non conveniens* dismissal was denied in the context of a petition to confirm an international arbitral award, those cases are readily distinguishable.  Both cases, unlike here, involved the enforcement of awards for money damages where respondent allegedly had assets in the forum and, unlike here, there were no "outstanding issues of foreign law to be decided."  *See Schneider v. Thailand*, No. 10

17

Civ. 2729(DAB), 2011 WL 12871599, at *8 (S.D.N.Y. Mar. 14, 2011), *aff'd*, 688 F.3d 68 (2d Cir. 2012); *Thai-Lao Lignite (Thailand) Co. v. Laos*, No. 10 Civ. 5356(KMW), 2011 WL 3516154, at *10-12 (S.D.N.Y. Aug. 3, 2011).

### III.   In the Alternative, Confirmation Should Be Denied Because the Tribunal Had No Authority to Resolve Mitsui's Dispute With Alstom

#### A.   Whether Mitsui Was Bound to Arbitrate Is Subject to *De Novo* Review By This Court

Alstom's Petition should be also denied because Mitsui did not agree to arbitrate any dispute with Alstom and thus the Tribunal had no authority over Mitsui.  *See, e.g.*, *VRG Linhas Aereas S/A v. MatlinPatterson Global Opportunities Partners II L.P.*, 605 F. App'x 59, 61 (2d Cir. 2015) (affirming denial of confirmation after finding respondent did not agree to arbitrate).

Whether Mitsui agreed to arbitrate is a question of arbitrability; the Supreme Court has mandated that questions of arbitrability are subject to *de novo* review by the courts at the confirmation stage absent "'clea[r] and unmistakabl[e] evidence'" that "the parties agreed" to submit questions of arbitrability to the arbitrators.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995) (alteration in original) (citation omitted).  Here, there is no clear and unmistakable evidence that Mistui agreed to arbitrate anything, let alone arbitrability.  *See Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 662 (2d Cir. 2005) (where Oracle was not a named party to the agreements and was not mentioned in the agreement, there was no "clear and unmistakable" intent by Oracle to permit arbitrators to decide arbitrability).

The most that Alstom can possibly say is that *Alunorte*, Mitsui's insured, agreed to submit arbitrability to the arbitrators by incorporating the ICC Rules into its agreement to arbitrate with Alstom.  (*See* Pet. Opp. at 29-30, 32-33.)  Yet the extent to which a **non-signatory** respondent may be involuntarily bound by an arbitration agreement remains a question for the

courts.  As one of the cases cited by Alstom correctly notes, "an arbitrator in an ICC arbitration would have jurisdiction to decide issues of arbitrability, *but only between the parties to the arbitration agreement.*"  *QPro Inc. v. RTD Quality Servs. USA, Inc.*, 761 F. Supp. 2d 492, 497 (S.D. Tex. 2011) (emphasis added) (whether non-signatory could invoke ICC arbitration clause was a question for the court); *see also, e.g.*, *Shaw Grp., Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (signatory parties agreed to arbitrate scope of arbitration clause via submission to ICC Rules); *Baysand Inc. v. Toshiba Corp.*, No. 15-cv-02425-BLF, 2015 WL 7293651, at *4 (N.D. Cal. Nov. 19, 2015) (signatories were bound by choice of ICC Rules); *Silec Cable S.A.S. v. Alcoa Fjardaal, SF*, No. 12-01392, 2012 WL 5906535, at *18 (W.D. Pa. Nov. 26, 2012) (submission to ICC Rules by signatory amounted to agreement to arbitrate scope of the arbitration agreement).

Alstom mischaracterizes two cases in which the First and Second Circuits held that the arbitrators had jurisdiction to determine whether a non-signatory to an arbitration agreement could pursue arbitration proceedings against a signatory.  (*See* Pet. Opp. at 33-34.) Those cases are inapplicable here because in those cases, the non-signatory was attempting to compel the signatory to arbitrate; the cases were decided based upon the written consent of the *party resisting arbitration* to arbitrate questions of arbitrability.  *See Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 210-11 (2d Cir. 2005) (finding that because "the party seeking to avoid arbitration was a signatory to the arbitration agreement," it had "'agreed to be bound' by provisions that 'clearly and unmistakably allow the arbitrator to determine her own jurisdiction'") (quoting *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989)).  The reverse is true here:  The party resisting arbitration, Mitsui, is not a signatory to the arbitration agreement and thus never agreed to be bound by the ICC rules.

There is no doubt that the "general presumption that the issue of arbitrability should be resolved by the courts" applies in the present case, where Mitsui is a non-signatory to the arbitration agreement at issue. *See Contec*, 398 F.3d at 208. Accordingly, the Court should determine *de novo* whether Mitsui is bound by the arbitration agreement between Alunorte and Alstom.

### B.    Brazilian Law Governs the Question of Whether Mitsui Was Bound to Arbitrate

The arbitration agreement between Alstom and Alunorte provides that any interpretation thereof "shall be based on the law of Brasil."  (*See* Notice of Removal, Ex. I (Award ¶ 12); Kuck Decl. Ex. A (Supply Contract Cl. 24.1(g)).)  The Supreme Court has made clear that whether a non-signatory is bound by an arbitration clause is governed by the applicable state contract law, not federal arbitration law.  In *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624 (2009), the Court explained that the FAA does not "purport[] to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)."  *Id.* at 630.

In line with these principles, the Second Circuit has held that foreign law, as provided for in a contractual choice-of-law clause, governs the question of whether non-signatories are bound to arbitrate.  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir. 2004); *see also FR 8 Sing. Pte. Ltd. v. Albacore Mar., Inc.*, 794 F. Supp. 2d 449, 451-59 (S.D.N.Y. 2011) (English choice-of-law clause governed the question of whether third party could be bound to arbitrate as signatory's corporate "alter ego[]").  Accordingly, Brazilian law governs whether Mitsui was bound to arbitrate its claim against Alstom.[8]

---

[8]    Alstom's argument that the so-called "validation principle" weighs in favor of confirmation (Pet. Opp.  42-43) is not supported by any U.S. law.  Rather, Alstom cites only one secondary source for this "principle."  (*Id.*

*(cont'd)*

### C.     Mitsui Was Not Bound to Arbitrate Under Brazilian Law

Under Brazilian law, insurers who pursue a statutory subrogation claim are not bound by an arbitration clause in the insured's contract with a third party.  (*See* Resp. Mem. at 23-28.)  Here, Alstom does not affirmatively argue that Mitsui was bound to arbitrate as a matter of Brazilian law, relying instead on a rote recitation of the Tribunal's "more than [] colorable" findings to that effect.  (Pet. Opp. at 41.)   But as explained above and in Mitsui's opening memorandum, this Court is not bound by the Tribunal's plainly results-oriented decision on matters of arbitrability and must decide the issue *de novo*.  (*See* Resp. Mem. at 25-28.)

Mitsui's claim against Alstom in the Brazilian Proceedings arises from Article 786 of the Brazilian Civil Code, which provides that "[u]pon payment of the indemnification, the insurer is subrogated, up to the amount of the indemnification paid, in the rights and actions that the insured has against the person who caused the damage."  (Dec. 2015 Kuck Decl. Ex. B (Excerpt of Leslie Rose, *O Código Civil Brasileiro em Inglês / The Brazilian Civil Code in English*).)  Brazil's lower courts have repeatedly held that an insurer bringing a subrogation claim under Article 786 is not bound to an arbitration clause signed between the defendant and its insured.[9]   Indeed, the single case Alstom cited to the contrary expressly states that it was

_____

*(cont'd from previous page)*
    (quoting Gary B. Born, *International Commercial Arbitration* 475-563 (2d ed. 2014)).)  However, vague notions of the Panama Convention's "'pro-enforcement objectives'" do not validate Alstom's argument that the Award should be confirmed as long as the law of some jurisdiction would support confirmation.

[9]     *See, e.g.*, Dec. 2015 Kuck Decl. Ex. J (Tribunal de Justiça do Estado de São Paulo [TJ-SP] [São Paulo Tribunal of Justice], Appeal No. 00375-47.2012, July 31 2013 (Braz.).) (insurer could not be compelled to arbitrate because "[t]he arbitration clause binds only the contracting parties, and not third parties who did not commit to it"); *id.* Ex. K (TJ-SP, Appeal No. 0030807-20.2010.8.26.0562, June 13 2012 (Braz.).) (insurer not bound to arbitration clause because "[t]he insurer's subrogation right is not the same material right that arises from the maritime transport contract [between the insured and the defendant], but rather arises from the insurance contract"); *id.* Ex. L (TJ-SP, Appeal No. 0000254-21.2010.8.26.0002, Feb. 1 2012 (Braz.).) ("It is not possible to impose upon the plaintiff an arbitration clause that creates an obligation and imposes a method of dispute resolution, absent the plaintiff's consent, because only the contracting parties agreed beforehand to that type of dispute resolution . . . ."); *id.* Ex. M (TJ-SP, Appeal with Revision No. 990.09.373821-0, Mar. 11 2010 (Braz.).) (rejecting the argument that the insurer was bound to an arbitration clause simply by virtue of exercising its

*(cont'd)*

"diverging" from this "majority opinion."  (*See* Dec. 2015 Kuck Decl. Ex. Q (Alstom translation of *Panalpina World Transport (PRC) Ltd. v. Bradesco Auto-Re Companhia de Seguros*) at 424-25.)

Although Alstom's Homologation Action will be the first time in which Brazil's highest Court, the STJ, considers whether a subrogated insurer is bound to an arbitration agreement entered into between the defendant and its insured (*see* Pet. Opp. at 16), the STJ has already ruled that a subrogated insurer is *not* bound to a *forum selection* agreement entered into between the defendant and its insured, on the basis that subrogation under Article 786 transfers only substantive rights and as such "the forum selection clause established in the contract between the insured and the [defendant] does not have any effect in relation to the subrogated insurer."  (Jan. 2016 Kuck Decl. Ex. B (*Aliança Navegação e Logística Ltda. v. Unibanco AIG Seguros, S.A.*, Superior Tribunal de Justiça [STJ] [Superior Court of Justice], Special Appeal No. 1.038.607-SP (2008/0052074-1), May 20 2008 (Braz.)).)   Under the same reasoning, an arbitration clause, which a type of forum selection clause, also would not be binding on the insurer.

## IV.    Alstom's Other Arguments Mischaracterize Mitsui's Motion And Are Unavailing

Alstom makes a number of other arguments that are not only legally baseless, but also mischaracterize Mitsui's arguments.  All of these arguments can be easily disposed of.

*First,* Alstom erroneously suggests that Mitsui has sought to "vacate" individual "rulings" made by the Tribunal.  (Pet. Opp. at 1, 38, 43-44 & n.11.)  For the avoidance of doubt, Mitsui has not moved to vacate the Award under Section 10 of the FAA.  *See* 9 U.S.C. § 10

_____

*(cont'd from previous page)*

   right of subrogation); *see also id.* Ex. N (TJ-SP, Appeal No. 0106428-85.2009.8.26.0100, Mar. 18 2013 (Braz.).) (beneficiary of an insurance policy could not be bound to arbitration clause in the policy because it was "merely a third party in the juridical relation" between the insurer and the insured).)

(providing grounds for vacatur).  Rather, Mitsui has opposed confirmation of the Award based on the lack of a valid arbitration agreement between the parties, as well as the fact that the purported "arbitration agreement" between Alstom and Mitsui "is not valid under the law to which the parties have submitted it" – that is, Brazilian law.  *See* Inter-American Convention on Int'l Commercial Arbitration arts. 1, 5(1)(a), Jan. 30, 1975, 1438 U.N.T.S. 245, 14 I.L.M. 336; *see also* 9 U.S.C. § 2.  These flaws make the Award unenforceable in its entirety against Mitsui. (*See* Pet. Opp. at 43-44.)

*Second,* it is simply not true, as Alstom states, that "Mitsui has not invoked any of the[] specific grounds" in the Panama Convention as a basis for non-enforcement.  (*See* Pet. Opp. at 39-40.)  Alstom mischaracterizes Article 5(1)(a) of the Panama Convention, which permits courts to refuse recognition and enforcement of an arbitration award not only where "[t]he parties to the agreement . . . were . . . under some incapacity," but *also* where "the said agreement is not valid under the law to which the parties have submitted it." *See* Panama Convention, Art. 5(1)(a).  Indeed, Mitsui's opening papers expressly invoked the lack of a valid arbitration agreement under Article 1 and the invalidity of the arbitration agreement under Article 5(1)(a) of the Panama Convention.  (*See* Resp. Mem. at 23.)  Where, as here, there is no agreement to arbitrate, confirmation must be denied.  *See VRG Linhas Aereas*, 605 F. App'x at 61.

*Finally*, Alstom repeatedly argues that the Tribunal's finding that Mitsui was bound to arbitrate "must be confirmed" so long as there was a "'barely colorable justification'" for it.  (Pet. Opp. at 1, 3, 38-39, 41-42.)  But as the cases cited by Alstom make clear, and as discussed above, this standard of review applies only to challenges to the merits of an arbitral award, not to challenges regarding the arbitrability of the dispute in the first instance.

## <u>CONCLUSION</u>

For all of these reasons, as well as the reasons stated in Mitsui's opening memorandum, Mitsui respectfully requests that the Court dismiss the Petition in its entirety with prejudice.

Dated:  March 2, 2016

Respectfully submitted,

 /s/ Lea Haber Kuck
Lea Haber Kuck
lea.kuck@skadden.com
Elizabeth A. Hellmann
betsy.hellmann@skadden.com
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000

*Attorneys for Respondent Mitsui Sumitomo*
*Seguros S.A.*