USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/20/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
ALSTOM BRASIL ENERGIA E TRANSPORTE
LTDA., ALSTOM POWER, INC.,

                        PETITIONERS,

   -against-

MITSUI SUMITOMO SEGUROS S.A.,

                        RESPONDENT.

------------------------------------------------------------ X

**ORDER AND OPINION CONFIRMING ARBITRATION AWARD**

15 Civ. 8221 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      When an insurer indemnifies its insured and sues the party believed to have caused the damage that the insurer indemnified, what is the source of the insurer's right to sue? If a supplier's product caused that damage, is it the supply contract between the insured and the supplier? And if a clause in that contract provides that disputes be arbitrated, is that clause binding on the insurer, or may the insurer disregard that clause and claim all other contract rights that the insured had against its supplier?

      These are the questions raised by the motions before me: petitioners' motion to confirm the arbitration award in its favor, and respondent's motion to dismiss the petition for lack of jurisdiction. For the reasons stated in this opinion, I grant petitioners' motion, and deny respondent's motion.

      **I.    Factual Background**

      **A. The Parties**

      Petitioners, Alstom Power, Inc. and Alstom Brasil Energia e Transporte Ltda. ("Alstom Power" for the former, "Alstom Brasil" for the latter, and "Alstom" for both) are corporations incorporated in Delaware and Brazil, respectively. Alstom Brasil provides power

generation equipment and services to companies in Brazil. Alstom Power has its principal place of business in Windsor, Connecticut, and provides power generation-related services around the world.

Mitsui Sumitomo Seguros S.A. ("Mitsui") is an insurance company incorporated in Brazil. It is a subsidiary of the Japanese company, Mitsui Sumitomo Insurance Group, which, through many subsidiary and affiliated companies, provides a variety of insurance products, in the United States and many other countries.

Alumina do Norte do Brasil S.A. ("Alunorte"), although not a party to this action, is nevertheless significant to these proceedings. Alunorte's facility in Barcarena, Brazil, is an aluminum refiner. Pursuant to a supply contract with Alunorte, Alstom sold and delivered two steam generation units to be installed in that facility. In August of 2007, Alunorte had to shut down the facility because of ruptures in the specialized aluminum tubing ("Freeboard Tubes"), that was a component part of the steam generation units supplied by Alstom. In September of 2007, as Alunorte restarted the facility, a fire began because of debris in the steam generation system. Both incidents caused substantial property damage and lost profits. After the incidents, on July 20, 2009, Alunorte and Alstom entered into an additional compromise agreement, a "Certificate of Conclusion and Final Receipt," under which each party confirmed that the other had complied with its contractual obligations, and released the other party from all actual or potential claims through that date. Dkt. No. 6(10), Arbitration Award, ¶89, at p. 25.

Alunorte also made claim against Mitsui to recover its property and profit losses under the insurance and indemnity contract granted by Mitsui for the year between February 5, 2007 and February 5, 2008. Mitsui settled the claim by paying Alunorte $ 24,558,073.11.

On April 15, 2014, Mitsui sued Alstom in the Brazilian courts, in Rio de Janeiro, to recover its indemnity payment to Alunorte. Alstom served a Demand for Arbitration with

2

Mitsui, on December 9, 2014, before the International Chamber of Commerce in New York City ("ICC"), thus invoking the arbitration clause of the Alstom-Alunorte supply contract, clause 24.1. Alstom moved to dismiss Mitsui's lawsuit in the Brazilian courts. Mitsui entered a special appearance in the arbitration, contesting the jurisdiction of the arbitration tribunal. On February 5, 2015, the Secretariat of the ICC advised the parties that the ICC court had issued its decision, under Articles 6(3) and 6(4) of the ICC rules, holding that the arbitration would proceed in New York. These ICC rules are discussed further below, *see infra* p. 5.

The arbitration hearings were held May 18 – 19, 2015. On July 10, 2015, the arbitrators issued their Award, holding that the tribunal had jurisdiction over the parties and to hear and to decide the dispute, that under both Brazilian law and under federal common law or New York law, Mitsui was bound by the arbitration agreements set out in clause 24.1 of the contract between Alunorte and Alstom, and bound also by the release given by Alunorte to Alstom; and that Mitsui could not sue Alstom in the courts of Brazil. It dismissed Mitsui's claim against Alstom, and the counterclaim of Alstom for damages, and held that each party was to bear its own costs. *See* Dkt. Nos. 6(11)-(12), Arbitration Award, ¶¶ 255, 418-24, at pp. 62-63, 95.

Alstom petitioned to confirm the award in the Supreme Court of the State of New York, New York County on August 6, 2015. NY CPLR § 7510. Mitsui timely removed the action to this court. *See* 9 U.S.C. §§ 201, 203, 205 (Federal Arbitration Act ("FAA"), implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention")). Mitsui then filed a motion to dismiss Alstom's petition, arguing that Mitsui was not a party to, and was not bound by, the arbitration agreement, that this court lacks personal jurisdiction, and that the petition should be dismissed for forum non conveniens.

## B. The Relevant Clauses of the Supply and Insurance Contracts

Clause 24.1 of the Alstom-Alunorte supply contract provides that "disagreements . . . that cannot be amicably settled" are to be arbitrated. It states:

> The disagreements and *casus omissus* arising under[1] this contract that cannot be amicably settled by the good faith negotiation of the parties, . . . shall be submitted to the arbitral court . . . .

Dkt. No. 20(2), p. 15. Clause 24.1(d) provides the site of arbitration (New York City), its nature (the ICC), and the rules that will govern (ICC Rules).

> The Arbitral Court . . . shall conduct the arbitration according to the Rules of the International Chamber of Commerce (ICC) at a site in New York City, New York, USA.

*Id.* Clause 24.1(g) provides the law to govern the arbitrators:

> Any decision or award of the arbitrators shall be based solely on the Articles of this Agreement. If the subject matter for the decision or award is not provided for in such Articles, it shall be based on the law of Brasil, but only to the extent such law is consistent with the Articles of this Agreement.

*Id.* at p. 16. Clause 10 of Mitsui's Insurance Agreement with Alunorte provides subrogation rights to Mitsui against third parties "whose acts or deeds . . . cause[d] the indemnified damage." It states:

> 1. The Insurer, once the indemnity of the loss has been paid, will be subrogated, up to the fulfillment of this indemnity, to the Insured's rights and actions against third parties whose acts or deeds have led to the cause of the indemnified damage, being able to demand from the Insured, at any time, the assignment agreement and the appropriate documents for the exercise of these rights.
>
> 2. The Insured cannot carry out any act which prejudices the Insurer's right of subrogation or come to an agreement or settle with third parties responsible for the loss, except with previous and express authority from the Insurer.

---

[1] The arbitrators corrected the parties' "free" interpretation. The "correct translation," they held, was "arising from," or "originating in or out of," or "resulting from," or "derived from." Dkt. No. 6(10), Arbitration Award, ¶130, at p 36. Mitsui had argued that its claim did not arise under the contract, but by operation of law.

4

Dkt. No. 6(10), Arbitration Award, ¶85, at p.24.

## II. Discussion

### A. Mitsui's Obligation to Arbitrate the Dispute with Alstom

Customarily, the question of a dispute's arbitrability is for the court, except if the parties have agreed to submit that question to the arbitrators. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). And, "a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration." *Id.*

Here, Mitsui made a special appearance to challenge the jurisdiction of the ICC arbitration tribunal over it. Under the ICC's rules of arbitration, the ICC secretariat can refer a question of jurisdiction either to the arbitration tribunal, or to the ICC International Court of Arbitration.[2] *See* ICC Rules, Art. 6(3) ("any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitral tribunal, unless the Secretary General refers the matter to the Court for its decision"); Art. 6(4) ("In all cases referred to the Court under Article 6(3), the Court shall decide whether and to what extent the arbitration shall proceed. The arbitration shall proceed if and to the extent that the Court is prima facie satisfied that an arbitration agreement under the Rules may exist."). The arbitrators were given that issue, and held that since Alunorte had the obligation to arbitrate disputes with Alstom, Mitsui, as subrogee of Alunorte, had the same obligation. Pursuant to the choice of law clause of the Alunorte-Alstom supply contract, the arbitrators applied Brazilian law as to the nature of the subrogation right, and held:

> Article 786 of the Brazilian Civil Code (and Clauses 10 and 15 of the Mitsui Policy) thus clearly lay down the rule that the insurer, upon payment of the indemnity, subrogates *into the rights and actions which the insured had against the third party.* The rights and actions transferred from the insured to the insurer are the same rights and actions, and the

---

[2] The International Court of Arbitration of the ICC is its "independent arbitration body." ICC Rules, Art. 1(1). The Court does not itself resolve disputes, but administers the resolution of disputes by arbitral disputes. *Id.*, Art. 1(2).

> same *nature* of rights and actions the insured had, and only those rights
> and actions.

Dkt. No. 6(11), Arbitration Award, ¶178, at p. 47. Quoting from one of Mitsui's experts, the arbitration tribunal emphasized:

> [T]he insured's rights and actions against the third party are, by mere operation of law (ipso jure) transferred to the insurer.

*Id.* at ¶179. And it does not matter if the transferred rights sound in tort or contract. "[W]hether contractual or legal," whether rights and actions are transferred by the insurance contract or by operation of law, "subrogation under Brazilian law entails that the insurer is subrogated into whatever rights and actions the insured had in the first place. *Id.* at ¶180.

Mitsui takes issue with this conclusion of the arbitrators and argues that this court should determine if Mitsui is bound by Alstom's and Alunorte's agreement to arbitrate disputes between them, and not give deference to the arbitration panel's determination. Mitsui argues that since the Alunorte-Alstom supply contract was made in Brazil and to be performed in Brazil, and since Mitsui's insurance agreement with Alunorte was also made and performed in Brazil, Brazilian law should control. Mitsui argues that under Brazilian case law, since Mitsui was not a party to the contract between Alunorte and Alstom, it should not be bound by their agreement.

Because Mitsui, a non-signatory to the arbitration agreement, "did not clearly agree to submit the question of arbitrability to arbitration," the question of whether they are bound to the arbitration provision is subject to "independent review." *First Options*, 514 U.S. at 947. No deference is due on this issue to the determination of the arbitrators as to whether Mitsui was within its jurisdiction. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 392 (2d Cir. 2011) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)), and thus whether Mitsui is bound by the

6

arbitration agreement is a question of contract law. This court, not the arbitrators, must decide in the first instance which state's contract law to apply, federal law or the law of Brazil, on the issue of Mitsui's obligation to arbitrate.

A federal court ordinarily decides conflicts-of-law issues with reference to the choice-of-law rules of the forum state. *See Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (in diversity cases, "it is well settled that a federal court must look to the choice of law rules of the forum state"); *see also* Rest. (2d) Confl. § 3 (1971), Rep. Note, cmt. (d). The forum is the U.S. District Court of the Southern District of New York. Mitsui removed the case from the Supreme Court, New York County, on the ground of federal jurisdiction. 9 U.S.C. §§ 202, 205. Federal jurisdiction is based on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, adopted by 156 state parties, including the United States and Brazil. *See generally id.* § 201 *et seq.* (Federal Arbitration Act ("FAA"), implementing Convention on Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention")). Unlike a case based on diversity of citizenship, where federal courts look to state-law for the rule of decision, *see Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629-30 (2009), in a case brought under the New York Convention, chapter two of the FAA, federal law governs, *see Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l. Inc.*, 198 F.3d 88, 96 (2d Cir. 1999); *see also Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2d Cir. 1980) ("This is a federal question case, however, and it is appropriate that we apply a federal common law choice of law rule in order to decide which of the concerned jurisdiction's substantive law . . . should govern.").

One important consideration in the choice-of-law determination of a contract dispute is what the parties intended. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004) ("We have applied a choice-of-law clause to determine which laws govern the validity

7

of an agreement to arbitrate."); Rest. (2d) of Confl. § 187 (1971) ("The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."). Here, the contract between Alunorte, Mitsui's insured, and Alstom did provide a choice-of-law clause – Brazil – but "only to the extent such law is consistent with the Articles of this Agreement" and "if the subject matter for the decision or award is not provided for in such Articles." Dkt. No. 20(2), ¶24.1(g), p. 16. And, the same contract also required "good faith negotiation" of "disagreements and *casus omissus*" and then, if negotiations failed, arbitration of disputes by the ICC in New York. Dkt. No. 20(2), ¶24.1, p. 15. Alunorte and Alstom thus intended that any dispute would take place before the ICC in New York, and not in the Brazilian courts, or any other courts. The forum in which sophisticated parties chose to conduct arbitration proceedings (the ICC in New York City) reflects their expectation, to which Mitsui, as subrogated party, succeeded, as to the governing law and the liberal arbitration policy that they can there expect. *See* Rest. (2d) Confl. § 218 (1971) ("Provision by the parties in a contract that arbitration shall take place in a certain state may provide some evidence of an intention on their part that the local law of this state should govern the contract as a whole. "); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) ("federal policy" embodies a "strong belief in the efficacy of arbitral procedures").

The application of federal arbitration law, consonant with the "general principles of domestic contract law," is thus appropriate, and consistent with the parties' demonstrated intent through their selection of a U.S. arbitral forum. *Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 661 (2d Cir. 2005) ("Under American law, whether a party has consented to arbitrate is an issue to be decided by the Court in which enforcement of an award is sought.... [A]nd the Court decides, based on general principles of domestic contract law, whether the parties agreed

to submit the issue of arbitrability to the arbitrators."). Under clearly established principles applied in the federal courts, "a party may be bound by an agreement to arbitrate even in the absence of a signature." *McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980) (citing *A/S Custodia v. Lessin International, Inc.*, 503 F.2d 318 (2d Cir. 1974); *Fisser v. International Bank*, 282 F.2d 231, 235 (2d Cir. 1960)); *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). A related "clearly established" general rule is that "an insurer-subrogee stands in the shoes of its insured." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (internal quotation marks omitted). Accordingly, "any defenses that are valid against the insured are also applicable against the insurer." *Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d Cir. 1992). Thus, "if the named plaintiffs would be required to submit the controversy to arbitration, then plaintiffs' insurer will be similarly bound." *Solomon v. Consol. Resistance Co. of Am.*, 97 A.D.2d 791, 792 (2d Dep't 1983). "[T]here is 'no valid basis in law or equity why an arbitration clause should not be enforced against a subrogee.'" *Stolt Tankers BV v. Allianz Seguros, S.A.*, 2011 WL 2436662, at *2 (S.D.N.Y. June 16, 2011) (quoting *Lumbermans Mut. Cas. Co. v. Borden Co.*, 268 F.Supp. 303, 314 (S.D.N.Y. 1967)); *see also American Bureau of Shipping*, 170 F.3d at 352.

The Mitsui-Alunorte insurance contract gave Mitsui a clear subrogation right, "once the indemnity of the loss has been paid." Dkt. No. 6(10), Arbitration Award, ¶86, at p. 24. The Alunorte-Alstom supply contract required "good faith negotiation" of "disagreements and *casus omissus*" and then, if negotiations failed, arbitration of disputes by the ICC in New York. Dkt. No. 20(2), ¶24.1, p. 15. Mitsui knew when it extended insurance that it would be assuming subrogation rights, and taking over the rights of its insureds, should it have to indemnify its insureds. These rights are defined by contracts made by the insureds, and Mitsui, as insurer, can

9

have no better, or different, rights than those belonging to its insured. As Article 786 of the Brazilian Code describes those rights:

> After the indemnity is paid, the insurer will acquire by subrogation, within the limits of the respective value, the rights and actions that would be entitled to the Insured against the one committing the damage.

Dkt. Nos. 6(10)-(11), Arbitration Award, ¶168, at pp. 43-44. By pursuing Alunorte's contract claim against Alstom, Mitsui was bound by the arbitration clause that would have bound Alunorte.

Mitsui makes essentially two arguments in support of its motion to dismiss. First, it characterizes its dispute as arising from a tort committed by Alstom against Alunorte and, it argues, the arbitration clause between them was limited to contract disputes. Second, it argues that Brazilian law governs and, under Brazilian law, a subrogated party does not have to arbitrate. Both arguments lack merit.

Mitsui indemnified Alunorte for damages arising from Alstom's delivery of defective piping in a power plant that Alstom contracted to deliver. There were no third parties involved; only the parties to the Alunorte-Alstom supply contract. Mitsui's characterization of the contract dispute as a tort is an invention to serve an argument.

As to Brazilian law, Mitsui cites several decisions of Brazilian lower and intermediate courts to the effect that arbitration is a procedural remedy, and a subrogated insurer, advancing a substantive right, is not bound to follow the procedural remedy. *See* Mitsui Br. at 24 n.10 (collecting cases). Alstom cites a decision of an intermediate court to opposite effect, that a subrogated insurer is bound by an arbitration clause in the contract to which it succeeds. *See Panalpina World Transport (PRC) Ltd. v. Bradesco Auto-Re Companhia de Seguros*, São Paulo Court of Appeal ("SPCA") (Appeal no. 0149349-88.2011.8.23.0100). Alstom's expert in the ICC, Professor Luis Olavo Baptista, expressed the opinion that only the Supreme Tribunal de Justica,

10

the highest Brazilian court, could issue a ruling with binding effect, and there is no such extant ruling. *See* Dkt. No. 20(27), Arbitration Transcript, at pp. 257-59. The arbitrators took extensive submissions on Brazilian law, and came to a conclusion opposite to that urged by Mitsui.

The arguments about Brazilian law are not relevant, for federal law governs, and federal law makes it clear that Mitsui was bound to arbitrate the dispute with Alstom. Accordingly, Mitsui's motion to dismiss the arbitration award for lack of jurisdiction is denied.

### B. Personal Jurisdiction Over Mitsui

Mitsui argues that it lacks any contacts with the forum state, and thus that personal and general jurisdiction in New York are improper. *See Walden v. Fiore*, 134 S. Ct. 1115 (2014); *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). But Mitsui's argument is unavailing. Just as it is bound by the arbitration provision in the supply contract, it is equally bound by the forum selection provision therein.

The arbitration agreement between Alstom and Alunorte designated New York as the arbitral forum. The parties agreed to "conduct the arbitration . . . at a site in the New York City, New York, USA." Dkt. No. 20(2), ¶24.1(d), p. 14. "It is well-settled that federal courts applying New York law have personal jurisdiction over parties that agree to arbitrate their disputes in New York." *Am. Bureau of Shipping*, 170 F.3d at 352; *see also Merrill Lynch, Pierce, Fenner & Smith v. Lecopolus*, 553 F.2d 842, 845 (2d Cir. 1977). Such a designation functions as the party's consent to jurisdiction, because "[t]o hold otherwise would be to render the arbitration clause a nullity." *Victory Transp. Inc. v. Comisaria Gen. de Abastecimientos y Transportes*, 336 F.2d 354, 363 (2d Cir. 1964).

"Because an insurer's 'right of recovery. . . is governed by the same terms as the insured's right of recovery,' an insurer-subrogee 'is equally bound by a consent to jurisdiction.'" *Stolt Tankers*, 2011 WL 2436662 at *2 (quoting *Farrell Lines Inc. v. Columbus Cello–Poly*

11

*Corp.*, 32 F.Supp.2d 118, 127 (S.D.N.Y. 1997) *and Novorossiyk Shipping Co. v. China Pacific Prop. Ins. Co.*, 2006 WL 3055964, at *1 (S.D.N.Y. Nov. 16, 2006)); *see also Am. Bureau of Shipping*, 170 F.3d at 352 ("But if the Owners are estopped from denying their obligations under the arbitration agreement between Tencara and ABS, it follows that they are also estopped from asserting a lack of personal jurisdiction based on that agreement."). As an entity standing in the shoes of its signatory, the arbitration clause is enforceable against Mitsui and this court has personal jurisdiction over it.

      Mitsui's objection to the service of process also fails. As this case was initially filed in New York state court, Alstom served Mitsui by serving the Secretary of New York State, and mailed a copy of the petition and other documents, requesting a return receipt, to Mitsui, and received a signed return receipt. *See* N.Y. B.C.L. § 307. Mitsui argues that Alstom cannot avail itself of section 307's requirements because Mitsui is not subject to general jurisdiction in the state, citing *Flick v. Stewart-Warner Corp.*, 76 N.Y.2d 50, 55 n.1 (1990), and because Alstom did not strictly comport with the procedural requirements of that section by filing proof of process.[3] But "[w]here a party has agreed to arbitrate and thus has consented to the jurisdiction of the courts where arbitration is to take place, 'the sole function of process' is to notify the other party of the proceedings." *Stolt Tankers*, 2011 WL 2436662, *2 (quoting *Victory Transp.*, 336 F.2d at 363). Mitsui does not contend that it lacked actual notice, and other "[c]ourts have

---

[3] In proceedings initiated in federal court, Federal Rule of Civil Procedure 4(f) applies to service upon individuals in a foreign country and permits service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those means authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1). The Hague Convention "enumerates several alternative methods of service, including: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the State. The Second Circuit has noted however, that failure to strictly adhere to the methods stipulated by the Convention '*is not* automatically fatal to effective service,' and has explained that the Convention 'should be read together with [Federal Rule of Civil Procedure] Rule 4, which 'stresses actual notice, rather than strict formalism.'" *MidOil USA, LLC v. Astra Project Fin Pty Ltd.*, No. 12 CIV. 8484 PAC KNF, 2013 WL 4400825, at *5 n.3 (S.D.N.Y. Aug. 15, 2013), *aff'd*, 594 F. App'x 48 (2d Cir. 2015) (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 301 (2d Cir. 2005) (emphasis in original)).

refused to dismiss actions when faced with similar objections to service." *MidOil USA, LLC v. Astra Project Fin. Pty Ltd.*, No. 12 CIV. 8484 PAC KNF, 2013 WL 4400825, at *2 (S.D.N.Y. Aug. 15, 2013), *aff'd*, 594 F. App'x 48 (2d Cir. 2015) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*, 553 F.2d 842, 845 (2d Cir. 1977)). Since Mitsui had effective notice of the proceedings and was not prejudiced by the type of service employed, I find that the method of service was sufficient. *See Victory Transp.*, 336 F.2d at 364.

### C. Forum Non Conveniens

Finally, Mitsui argues that New York is an improper forum for this action. *See Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 386 (2d Cir. 2011); *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002).

In a forum non conveniens analysis, a court "determine[s] what deference is owed a plaintiff's choice of forum." *Monegasque*, 311 F.3d at 498 (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc)). The court also considers the availability of an adequate alternative forum, and the balance of private interest factors, such as the convenience of the litigants, and public interest factors, like the "administrative difficulties associated with court congestion; [...] the local interest in resolving local disputes; and the problems implicated in the application of foreign law." *Id.* at 500 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).

Here, one of the petitioners, Alstom Power, Inc., is a U.S. entity. The parties agreed to, and did arbitrate this matter in New York. This agreement of both parties is entitled to deference. *Winterthur Int'l Am. Ins. Co. v. Bank of Montreal*, 2002 WL 31521102, at *5 (S.D.N.Y. Nov. 13, 2002) ("Because Defendants have agreed to arbitrate in New York, they are deemed to have agreed that New York is a convenient forum not only for arbitration, but also for enforcement of the

13

arbitration agreement"); *Dain Bosworth, Inc. v. Fedora*, 1993 WL 33642, at *2 (S.D.N.Y. Feb. 3, 1993) ("this action was properly brought in the same forum in which the parties have agreed to arbitrate").

Moreover, the arbitration has taken place in New York. *See* 9 U.S.C. § 204 ("An action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in . . . in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States."). The litigants, having already conducted the arbitration here, cannot persuasively argue that enforcing the arbitration award imposes some unique inconvenience. The private interest factors thus weigh in favor of the present forum. And the public interest factors align similarly. Since the arbitration took place in New York, federal law – rather than foreign law – is implicated in the motion to vacate, or confirm, that award. *Yusuf Ahmed Alghanim*, 126 F.3d at 21. This court has a narrow and deferential role in confirming, or vacating, an arbitration award. And such a role implicates the federal policy embodied in the FAA, towards facilitating "arbitral procedures for the resolution of international commercial disputes" and enforcing "freely negotiated choice-of-forum clauses." *See Mitsubishi Motors Corp. v., Inc.*, 473 U.S. at 631. I therefore find that dismissal on forums non conveniens grounds is not warranted.

### D. The Award Should be Confirmed

The arbitrators issued an award in favor of Alstom on July 10, 2015, after hearing several days of evidence. The arbitrators found that Alstom, after delivering the parts of its steam generation units, was not responsible for storage conditions, maintenance of the materials, or handling of the materials during the erection process. Dkt. No. 6(12), Arbitration Award, ¶384, at p. 87. Alstom was not responsible under the supply contract for the debris in the Freeboard Tubes that caused the 2007 incidents. *Id.* at ¶385, at p. 88. The arbitrators issued the

declaratory relief that Alstom had sought, holding that it had jurisdiction over Mitsui, and that, as Alunorte's subrogee, Mitsui was bound by the arbitration clause. The arbitrators found that Alstom was entitled to a declaration that Mitsui could not bring a warranty claim against Alstom in the Brazilian court proceeding. *Id.* The arbitration panel did not grant any monetary damages, and directed each party to bear its own fees and costs.

Alstom now seeks to confirm the arbitration panel's findings in the petition presently before the court. *See* 9 U.S.C. § 207 ("Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."). And, for the reasons stated above, this court should confirm the award.

### III.   Conclusion

Mitsui's motion to dismiss the petition is DENIED. Alstom's petition to confirm the arbitration award is GRANTED. The Clerk shall mark document number 12 terminated, enter judgment in favor of Alstom confirming the Final Award dated July 10, 2015, and mark the case closed.

SO ORDERED.

Dated:   June 20, 2016
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge